# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| CHRIS MURRAY, #*238-171*,<br><br>  Plaintiff,<br><br>v.<br><br>DR. MAHBOOBEH MEMARSADEGHI and<br>WEXFORD HEALTH SOURCES, INC.,<br><br>  Defendants. | Civil Action No. TDC-18-3728 |

## MEMORANDUM OPINION

Plaintiff Chris Murray, an inmate presently incarcerated at Maryland Correctional Institution-Hagerstown in Hagerstown, Maryland, has filed a civil action against Defendants Dr. Mahboobeh Memarsadeghi and Wexford Health Sources, Inc., asserting a violation of the Eighth Amendment of the United States Constitution arising from the alleged failure to provide adequate medical care to Murray while he was housed at the Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Although the Motion was fully briefed, Murray has filed a Motion for Leave to File a Surreply. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Murray's Motion for Leave to File a Surreply is GRANTED, and Defendants' Motion, construed as a Motion for Summary Judgment, is GRANTED.

## BACKGROUND

Murray has a significant medical history of hypertension, benign prostatic hyperplasia, urinary tract obstruction or contracture, asthma, diabetes mellitus, and a mental health history of

anti-social personality disorder. On September 28, 2015, while he was residing at RCI, Murray saw Dr. Memarsadeghi during a scheduled visit to discuss his long-standing complaint of a burning sensation upon urination, or dysuria, and occasional swelling of his scrotum. Dr. Memarsadeghi stated that she would review the results of a June 2018 cystoscopy and advised Murray to return in two weeks if the condition worsened or did not improve.

On November 5, 2015, Murray was seen by Dr. Ava Joubert-Curtis at the chronic care clinic. During that visit, Murray complained of left flank and lower back burning and cramping pain, as well as a dribbling, hesitant, and interrupted urinary stream. There was, however, no change in urine color, cloudy urine, decreased stream, or hematuria, the presence of blood in his urine. Dr. Joubert-Curtis noted that Murray had a prior history of urinary tract infections and had previously had a transurethral resection of the prostate, a surgical procedure to treat urinary problems resulting from an enlarged prostate, which Murray believed aggravated his symptoms. During her examination, Dr. Joubert-Curtis found no abnormalities with the penile shaft, urethral opening, scrotum, and testes, and that there was no urethral discharge. There were no abnormal groin lymph nodes, testicular masses, or costovertebral angle tenderness or suprapubic tenderness. Dr. Joubert-Curtis ordered blood tests and a urine culture.

On November 18, 2015, Murray had a medical visit with Crystal Jamison, a physician's assistant, to follow up on his complaints of dysuria, frequency of urination, and nocturia, or waking up at night because of the need to urinate. Jamison noted that Murray was in no apparent distress during the visit. She informed him that the urine culture was not successfully processed, so a new urine sample was taken with follow up to occur in two weeks.

According to Murray, in early December 2015 he experienced cramps and pain in his lower abdomen, swelling of his testicles, blood in his urine, and difficulty urinating. On December 4,

2015, Murray reported to the RCI medical department for an appointment with Dr. Memarsadeghi and, by telemedical conference, Dr. Scipio, a urologist. At that time, Murray reported suffering from a "cough productive of yellowish sputum for more than a week," for which a Zithromax pack was prescribed. Med. Records at 11, Mot. Summ. J. Ex. 1, ECF No. 12-4. As to Murray's complaints of testicular swelling and dysuria, Dr. Scipio recommended that Murray take the antibiotic Bactrim DS for 15 days, have a sitz bath twice daily, and take pyridium, a pain reliever for the lower part of the urinary tract, until the burning sensation stopped. Murray was advised to follow up with the medical staff if his condition worsened or did not improve within 14 days.

According to Murray, Dr. Scipio had requested that if symptoms did not improve within 14 days, Murray was to be sent to see Dr. Scipio at Bon Secours Hospital. He asserts that he informed Dr. Memarsadeghi at an unspecified time that the symptoms were continuing, but she did not refer him for an appointment with Dr. Scipio. Dr. Memarsadeghi, however, asserts that Dr. Scipio did not request such a referral and notes that no such order is documented in the medical records. She also states that she does not recall any report from Murray of recurring symptoms and discounts Murray's claim that he reported symptoms during an encounter in the hallway because medical staff are instructed not to provide advice in such situations but to direct inmates to the sick call process. Dr. Memarsadeghi also reports that she was out of the United States from December 25, 2015 to January 2, 2016.

On December 25, 2015, Murray saw Jamison at sick call and complained of urinary urgency and incontinence. He did not, however, report pain in urinating, and no blood was found in his urine. Murray was advised to use the sick call process if the symptoms did not subside or if they worsened. On December 30, 2015, Murray reported for a sick call visit with Nurse Carmen

Griffith and complained of testicular pain. Griffith referred Murray to a medical provider for a follow up in January 2016.

As a result, on January 13, 2016, Murray was examined by Dr. Memarsadeghi for his complaints of a urinary tract infection. Although Murray reported pain while urinating, tests showed no blood or white blood cells in Murray's urine. Dr. Memarsadeghi advised Murray to use the sick call process if his symptoms did not subside or if they became more severe. At a Division of Correction physical examination by a different doctor on January 17, 2016, urine tests again showed no blood in Murray's urine.

On January 20, 2016, Murray was seen by Dr. Joubert-Curtis at the chronic care clinic. Based on her discussions with Murray and her examination, Dr. Joubert-Curtis concluded that Murray was experiencing frequency of urination, hesitancy, urgency, dysuria, decreased urine stream, nocturia, left back pain, flank pain, and incontinence. He did not have blood in his urine, his scrotum was normal, and his testes were symmetric, not tender, and had no testicular masses. Although Dr. Joubert-Curtis suggested to Murray that some of his abdominal pain could be the result of scars from a past surgery for intestinal obstruction, Murray dismissed that theory.

On February 20, 2016 at 10:26 a.m., Murray was seen by Dr. Nimely during a sick call visit. Murray stated that he had been vomiting all night, experienced spurts of terrible pain in his abdomen, and felt as if he needed to have a bowel movement but could not. The medical staff gave Murray Pepto Bismol and Mylanta, and within 40 minutes, his pain resolved, and no vomiting occurred. Murray returned to his housing unit in stable condition.

At 2:13 p.m. that same day, Murray returned to the medical unit complaining that he had had vomited three times since returning to his housing unit and that he still felt like he needed to defecate. Murray reported pain of 5 on a scale of 1-5 in the right lower quadrant of his abdomen,

which was tender to the touch. Dr. Nimely placed an order for a 10 mg prochlorperazine intramuscular injection and referred Murray to Dr. Dolph Druckman, who directed staff to monitor Murray for three hours. At approximately 5:24 p.m., Dr. Druckman ordered that Murray be sent to the emergency room.

On February 21, 2016, an emergency physician at the Meritus Medical Center in Hagerstown, Maryland diagnosed that Murray had a small bowel obstruction and a possible closed loop obstruction that required surgery. Murray was then transferred by ambulance to Bon Secours Hospital in Baltimore, Maryland for surgical management. A CT scan of Murray's abdomen confirmed a small bowel obstruction. He was then taken to the operating room for surgery.

During the operation, Murray was noted to have urinary retention. Following consultation, Dr. Scipio performed a cystoscopy and urethrotomy to widen a narrowed urethra. Dr. Scipio also inserted a Foley catheter, which Murray reports to have provided immediate relief.

On February 26, 2016, following his release from Bon Secours Hospital, Murray was seen by Bernard Alenda, a nurse practitioner, for a post-operative examination. Murray was cleared for admission to the Jessup Regional Hospital for monitoring during his recovery. On March 7, 2016, Murray was examined by Dr. Melaku Ayalew. At the time of that visit, Murray's constipation symptoms had resolved and he had no complaints of abdominal pain or nausea. Based on Dr. Scipio's recommendation, the Foley catheter was removed. On March 8, 2016, Murray was transported back to RCI and was seen regularly for chronic care.

On December 3, 2018, Murray filed his Complaint in the present case, alleging medical malpractice, deliberate indifference to a serious medical need, and pain and suffering as a result of cruel and unusual punishment, in violation of the Eighth Amendment. He seeks monetary damages. In particular, Murray asserts that had Dr. Memarsadeghi referred him to Dr. Scipio in

December 2015, Dr. Scipio would have diagnosed and corrected the blocked urinary tract and provided relief from the pain months before the February 2016 surgery.

## DISCUSSION

### I. Motion for Leave to File a Surreply

Pursuant to the Local Rules of this Court, surreply briefs may not be filed absent leave of the Court and are disfavored. D. Md. Local R. 105.2(a). Upon review of Murray's Motion, the Court finds no basis to conclude that a surreply brief is warranted in this instance because it would not respond to an argument raised for the first time in the reply brief. Nevertheless, where Murray is self-represented and the surreply brief does not prejudice Defendants, the Court will grant the Motion.

### II. Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. Defendants argue that: (1) Murray fails to show that Dr. Memarsadeghi was deliberately indifferent to his serious medical needs; (2) Murray's claims of medical negligence are not judicially actionable; and (3) Murray does not allege facts sufficient to support a claim for punitive damages.

#### A. Legal Standards

Defendants filed their Motion as a Motion to Dismiss, or Alternatively, for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before

converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Murray has not filed an affidavit or declaration under Rule 56(d) and instead had included his own exhibits and affidavit to be considered by the Court. Therefore, the Court will construe Defendants' Motion as one for summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only

"genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. Eighth Amendment

In his Complaint, Murray asserts that Defendants violated the Eighth Amendment to the United States Constitution for deliberate indifference to a serious medical need. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate

indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Although Murray suffered from an objectively serious medical condition that required surgery, the record does not support a finding that Defendants acted with deliberate indifference to that need. The medical records establish that Murray voiced his complaints of testicular swelling and dysuria in late 2015, including to Dr. Memarsadeghi on December 4, 2015. Dr. Scipio joined Dr. Memarsadeghi in the medical consultation via telemedical conference and recommended the antibiotic Bactrim DS for 15 days, a sitz bath twice daily, and pyridium. Although Murray alleges that his symptoms continued and that Dr. Scipio had directed that Murray be referred for an appointment under such circumstances, Dr. Memarsadeghi asserts that such a referral was not mandated. Notably, the medical records provide no evidence of such a directive; rather, the records reflect that Murray was instructed to notify medical staff if his condition worsened or did not improve within 14 days.

The Court need not resolve this factual dispute because regardless of the specific plan of action suggested by Dr. Scipio or Dr. Memarsadeghi, neither Dr. Memarsadeghi nor RCI medical staff exhibited deliberate indifference to Murray's medical needs in the subsequent weeks and months. Murray returned to the medical unit for sick call visits on December 25, 2015, December

30, 2015, and January 13, 2016; for a physical examination on January 17, 2016; and for a chronic care clinic on January 20, 2016. Urine tests on December 25, January 13, and January 17 revealed no blood or white blood cells in Murray's urine. Dr. Memarsadeghi was present for only the January 13 and, based on the negative test results, did not recommend further consultation.

During the visit on January 20, 2016, there remained no blood in Murray's urine and he did not have swelling in his testicles. Considering Murray's scars from a surgery performed 20 years ago for intestinal obstruction, Dr. Joubert-Curtis theorized that some of Murray's abdominal discomfort could be a result of adhesions from that time and did not recommend further consultation. Murray did not seek medical attention again until February 20, 2016.

Where Dr. Memarsadeghi and other medical providers gave regular attention to Murray's condition, consulted with a urologist, and provided medical treatment, the Court concludes that the record, even viewed in the light most favorable to Murray, does not support a conclusion that they acted with deliberate indifference to his medical needs. Where Murray received antibiotics and other treatment in December 2016, he had negative test results for blood in his urine and infection between December 2016 and February 2016, and the time period between initial consultation and the discovery of the surgical need was limited, the failure to seek additional consultation relating to possible surgery was not unreasonable under the circumstances and in any event does not exhibit deliberate indifference by medical staff. *See Scinto*, 841 F.3d at 225 (stating that deliberate indifference is more than "mere negligence"). The fact that Murray disagreed with the decision not to seek additional consultation with Dr. Scipio at an earlier time does not establish an Eighth Amendment violation. *See id.* Notably, Dr. Memarsadeghi, the main Defendant whose conduct Murray questions, was not even present for many of the consultations and was not on duty during part of this time period. Accordingly, the Court concludes that there is no genuine issue of

material fact whether Defendants acted with deliberate indifference to a serious medical need. The Court will therefore grant summary judgment on the Eighth Amendment claim asserted by Murray.

To the extent that Murray's Complaint is construed as raising state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and thus will dismiss such claims. *See* 28 U.S.C. § 1367(c)(3). The Court thus need not and does not address Defendants' remaining claims for relief.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment will be GRANTED. A separate Order shall issue.

Date: December 4, 2019

THEODORE D. CHUANG
United States District Judge